HIRSCHBERG *et al. v.* UNITED STATES (No. 1613).[1]

1. WITNESS—COMPETENCY.

A witness with experience in the electric-light carbon business is competent to testify as to the composition of such carbons without having seen them manufactured.

2. CONSTRUCTION, PARAGRAPH 82, TARIFF ACT OF 1913.

The addition in the tariff act of 1913 of the words " carbons for flaming arc lamps, not specially provided for " to the provisions of the act of 1909 for carbons entirely of petroleum coke and carbons chiefly of lampblack or retort carbon, does not cover all carbons for flaming arc lamps, but only such of them as are not made chiefly of lampblack or retort carbon or entirely of petroleum coke.

3. FLAMING ARC-LAMP CARBONS OF LAMPBLACK OR RETORT CARBON, HOW DUTIABLE.

Flaming arc-lamp carbons in chief value of lampblack or retort carbon, with or without a core impregnated with chemical salts, are dutiable under paragraph 82, tariff act of 1913, as composed chiefly of lampblack or retort carbon at 40 cents per hundred feet, and not as carbons for flaming arc lamps not specially provided for at 30 per cent ad valorem.

United States Court of Customs Appeals, March 28, 1916.

APPEAL from Board of United States General Appraisers, Abstract 38223.

[Reversed.]

*Comstock & Washburn (Albert H. Washburn* of counsel) for appellants.

*Bert Hanson,* Assistant Attorney General (*John R. Rafter,* special attorney, of counsel), for the United States.

[Oral argument Feb. 8, 1916, by Mr. Washburn and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court: The importation in this suit consists of electric-light carbons. They were assessed for duty under paragraph 82 of the tariff act of 1913 as carbons for flaming arc lamps, and are claimed to be dutiable under the same paragraph as carbons for electric lighting composed chiefly of lampblack or retort carbon. The Board of General Appraisers found that the testimony was not sufficient to show which provision of paragraph 82 should govern the classification. They considered the testimony as not convincing upon this point.

An examination of the record, however, satisfies us that the board failed to accept at its value the testimony which was adduced on behalf of the importers. There were in evidence in this case various carbon sticks, some of which had a core of about one-sixteenth of an inch impregnated with chemical salts. Others of these carbon

sticks were of pure lampblack or retort carbon. Still another carbon stick, included in the importation but not here in controversy, was composed of lampblack impregnated throughout with chemical salts.

The witnesses testified as to these various exhibits that those containing the core of impregnated salts were still of chief value of lampblack; that as to the homogeneous carbon sticks, in which the chemical salts were present throughout, the chemical salt was of chief value. As to the latter, no claim was made.

This testimony stood undisputed. But it appeared on cross-examination that these witnesses had never been in the mills in which these carbons were produced, and it was perhaps this fact that led the board to discount their testimony and treat it as insufficient. The cross-examination of one of the witnesses was as follows:

Q. You have been speaking about the ingredients in some of these different exhibits. How have you acquired that information?—A. By having been in the business for such a long while.

Q. Have you ever been in the mills where these things are made?—A. I have not; but I have made some tests in lamps and have seen the carbons burning.

It appears that the witness Hirschberg had been in the carbon business since 1915 and that the witness Dubosch had been in the business for 17 years. It is easy to see that these witnesses might have acquired a knowledge of the contents of these carbons without actually having seen them manufactured. They were, for instance, enabled to make comparisons between a carbon stick composed wholly of lampblack and those in which chemical salts had been introduced in the core, and by comparison of the prices of the two, they were enabled to determine whether the lampblack or the salts were of chief value. So, too, a comparison of these grades with the homogeneous carbon would have enabled them to determine whether a substance other than lampblack constituted the chief value of the article. The testimony, it is to be borne in mind, is important only as affecting the question of value. The exact quantity of the ingredient or chemical salts is not material. The question is whether, in comparison, the chemical salts or the lampblack is of chief value, and this might be reached by comparisons such as those suggested. At all events the testimony so admitted stands without contradiction, and we think is enough to warrant prima facie a finding that the homogeneous carbons were in chief value of chemical salts and that the others were not.

This brings us to a consideration of the legal question in the case. Paragraph 82 reads as follows:

82. Gas retorts, 10 per centum ad valorem; lava tips for burners, 15 per centum ad valorem; carbons for electric lighting, wholly or partly finished,

made entirely from petroleum coke, 15 cents per hundred feet; if composed chiefly of lampblack or retort carbon, 40 cents per hundred feet; carbons for flaming arc lamps, not specially provided for in this section, and filter tubes, 30 per centum ad valorem; porous carbon pots for electric batteries, 15 per centum ad valorem.

The act of 1909, paragraph 96, provided for " carbons for electric lighting, wholly or partly finished, made entirely from petroleum coke, 35 cents per hundred feet; if composed of lampblack or retort carbon, 65 cents per hundred feet."

The provision of the act of 1913 follows closely this provision except in changing the rate and provides for " carbons for electric lighting, wholly or partly finished, made entirely from petroleum coke, 15 cents per hundred feet; if composed chiefly of lampblack or retort carbon, 40 cents per hundred feet."

It appears that the form of carbon containing a core of salts had been imported into this country as early as July, 1905, and has been in the market ever since as a commercial article. So that when the act of 1909 was adopted these carbons used for flaming arc lamps were provided for and covered by the provision of paragraph 82 last above quoted.

It appears by a petition to Congress made by a domestic manufacturer that within a year or two before the law of 1913 was enacted a new impetus had been given to the lighting industry when a new long-burning type of flaming arc lamp was put upon the market. The older types such as were in existence under the law of 1909 would burn from 10 to 17 hours, whereas the newer types are claimed to burn from 100 to 125 hours. Congress, in response to a request that the flaming arc lamp be treated separately and placed on an ad valorem basis, inserted the succeeding clause, namely, " carbons for flaming arc lamps, not specially provided for in this section,  *  *  * 30 per centum ad valorem."

The question presented is whether this latter clause is to replace the provision for carbons for electric lighting if composed chiefly of lampblack or retort carbon at the specific rate of 40 cents per hundred feet under the present law. In other words, whether, in view of the presence of the limitation " not specially provided for in this section," carbons for flaming arc lamps are to be given controlling effect, or whether this clause is to be held restricted by this provision to such as are not provided for in the earlier portions of the paragraph. We think the latter construction the sound one. It is to be kept in mind that this is the working provision under which this identical material must have been classified under the act of 1909. It was reenacted in substantially the same terms, with the change of rate. It had therefore been again specially provided for

in the act of 1913, and Congress, by inserting the provision restricting the particular provision for carbon for flaming arc lamps to such as are not specially provided for in the section, intended that such as were specially provided for would be controlled by the earlier provision, which was likewise present in the former tariff law.

The decision of the Board of General Appraisers is *reversed*.